IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

RIC SZABO,

   Plaintiff,

  v.

MUNCY INDUSTRIES, LLC,

   Defendant.

---

Civil Action No. 4:21-CV-00468

# **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF RIC SZABO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Murphy Law Group, LLC
Mary Kramer, Esq.
Michael Murphy, Esq.
Eight Penn Center, Suite 1803
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
mkramer@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: September 30, 2022

**TABLE OF CONTENTS**

I. INTRODUCTION & PROCEDURAL HISTORY ................................................. 1

II. FACTUAL BACKGROUND ....................................................................................... 1

III. ARGUMENT ................................................................................................................ 2

    A. Summary Judgment Standard ................................................................................ 2

    B. Muncy Has Failed to Identify Which Exemption It Believes Applied to Szabo During His Employment with Muncy ........................................................................... 3

    C. No Genuine Issues of Material Fact Exist with Regard to Whether Szabo Was a Non-Exempt Employee of Muncy Under the FLSA or the PMWA .............................. 4

        1. Szabo does not qualify for the FLSA's executive exemption ......................... 4

        2. Szabo does not qualify for the FLSA's professional exemption .................... 7

    D. Muncy's Failure to Comply with the FLSA and PMWA was Willful ................. 11

IV. CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575 (3d Cir. 2009) ...................................... 2
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................................. 2, 3
Baum v. AstraZeneca LP, 372 F. App'x. 246, 248 n.4 (3d Cir. 2010) ........................................ 3
Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................. 2
Commonwealth, Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd, 580 Pa. 66, 859 A.2d 1253 (Pa. 2004) ......................... 3
Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 2229, 41 L.Ed.2d 1, 11 (1974) ........................................................................................................................................ 3
Hines v. Consol. Rail Corp., 926 F.2d 262 (3d Cir. 1991) ........................................................... 2
Jean-Louis v. RGIS Inventory Specialists, LLC, C.A. No. 08-2662, 2011 U.S. Dist. LEXIS 93424, 2011 WL 3678532, at *12 (E.D. Pa. Aug. 22, 2011) ..................................................... 3
Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir. 2006) ........................................................... 3
King v. Dolgencorp, Inc., No. 3:09-CV-00146, 2010 U.S. Dist. LEXIS 140302, 2010 WL 9475736, at *10 (M.D. Pa. May 6, 2010) ................................................................................... 3
Lawrence v. City of Philadelphia, 527 F.3d 299 (3d Cir. 2008), cert. denied, 555 U.S. 1085 (2008) ........................................................................................................................................ 4
McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) ................................................... 11
Paul v. UPMC Health Sys., C.A. No. 06-1565, 2009 U.S. Dist. LEXIS 19277, 2009 WL 699943, at *8 n.1 (W.D. Pa. Mar. 10, 2009) ............................................................................................. 3
Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265 (3d Cir. 2010) ............................... 2, 10, 11
Souryavong v. Lackawanna Cnty., 872 F.3d 122, 126 (3d Cir. 2017) ....................................... 11
United States v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396 (3d Cir. 1990) .......... 2

**Statutes**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. ..................................................... 1
29 U.S.C. § 207(a)(1) ................................................................................................................... 3
Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq*. ................................. 1

**Rules**

Fed. R. Civ. P. 56(c); .................................................................................................................... 2

**Regulations**

29 C.F.R. § 541.100 ...................................................................................................................... 5,
29 C.F.R. § 541.300 ................................................................................................................... 7, 8
29 C.F.R. § 541.301 ...................................................................................................................... 8
29 C.F.R. § 541.301(c) ................................................................................................................. 8

29 C.F.R. § 541.301(d) .................................................................................................. 10
29 C.F.R. § 541.700(a) .................................................................................................... 6
29 C.F.R. § 541.700(b) .................................................................................................... 6

**I.      INTRODUCTION & PROCEDURAL HISTORY**

Plaintiff, Ric Szabo ("Szabo" or "Plaintiff"), initiated this action on March 16, 2021, alleging that his former employer, Muncy Industries, LLC ("Muncy" or "Defendant"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, by failing to pay Szabo overtime compensation for all hours worked over forty (40) in a workweek. See Docket No. 1. On June 8, 2021, Muncy filed a timely Answer without any Affirmative Defenses.

After the Court graciously agreed to extend discovery multiple times, discovery has closed in this matter with the deadline to file dispositive motions extended until September 30, 2022. See Docket No. 34. Accordingly, Szabo files the instant motion to respectfully request that the Court hold that Szabo was a non-exempt employee of Muncy as a matter of law under the FLSA and the PMWA.

**II.     FACTUAL BACKGROUND**

Muncy is in the wire rope industry and manufactures parts for "heavy lifting." See SOMF ¶ 2. Muncy has three facilities, with its main location in Pennsylvania. See SOMF ¶ 3. Szabo began working for Muncy on January 8, 2018 as a calibration technician. See SOMF ¶ 4. As a calibration technician, Szabo's job duties were to calibrate all load cells that came in-house, and to "travel and calibrate at different customers' locations." See SOMF ¶ 6. Szabo spent eighty percent (80%) of his time "out on the road and calibrating machines." See SOMF ¶ 7. Muncy does not have any mechanism by which it can track its calibration technicians' time when they are in the field. See SOMF ¶ 15.

Szabo would report to Megan Delahoussaye and Jason Fetter. See SOMF ¶¶ 17, 24. Szabo did not have anyone reporting to him. See SOMF ¶ 16. Szabo did not have authority to hire or fire

anyone. See SOMF ¶ 21. Szabo did not have any type of academic degree. See SOMF ¶ 25. Being a calibration technician for Muncy does not require anything beyond a certification, which generally takes three (3) to six (6) months of training, followed by an examination. See SOMF ¶ 26.

### III. ARGUMENT

#### A. Summary Judgment Standard.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).

A party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the aspects of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the party makes this initial showing, the burden shifts to the non-moving party to demonstrate that there is in fact a genuine issue of material fact. United States v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396, 398 (3d Cir. 1990). The nonmoving party, in meeting its burden, is entitled to all reasonable inferences in its favor. Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). Ultimately, the nonmoving party must present sufficient evidence from which a reasonable jury could return a verdict in the non-moving party's favor. Id.

Importantly, a "motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). An issue is genuine "only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

In the present matter, Szabo has met his initial burden and Muncy is unable to present any genuine issues of material fact that would preclude the entry of partial summary judgment in Szabo's favor on the issue of whether Szabo was a non-exempt employee under the FLSA and the PMWA.[1]

### B. Muncy Has Failed to Identify Which Exemption It Believes Applied to Szabo During His Employment with Muncy.

The FLSA provides that, subject to certain enumerated exemptions, all covered employees who work more than forty (40) hours in a workweek shall be paid at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week. 29 U.S.C. § 207(a)(1). The Supreme Court has held that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 2229,

---

[1] Szabo does not analyze the FLSA and PMWA separately. See, e.g., Baum v. AstraZeneca LP, 372 F. App'x. 246, 248 n.4 (3d Cir. 2010) ("According to the Pennsylvania courts, 'it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it.'") (quoting Commonwealth, Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd, 580 Pa. 66, 859 A.2d 1253 (Pa. 2004)); Jean-Louis v. RGIS Inventory Specialists, LLC, C.A. No. 08-2662, 2011 U.S. Dist. LEXIS 93424, 2011 WL 3678532, at *12 (E.D. Pa. Aug. 22, 2011); King v. Dolgencorp, Inc., No. 3:09-CV-00146, 2010 U.S. Dist. LEXIS 140302, 2010 WL 9475736, at *10 (M.D. Pa. May 6, 2010); Paul v. UPMC Health Sys., C.A. No. 06-1565, 2009 U.S. Dist. LEXIS 19277, 2009 WL 699943, at *8 n.1 (W.D. Pa. Mar. 10, 2009) (stating that "[t]he exemptions under both the FLSA and PMWA are identical").

41 L.Ed.2d 1, 11 (1974). FLSA exemptions should be construed narrowly against the employer. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008), cert. denied, 555 U.S. 1085 (2008). An employer seeking to rely on an FLSA exemption must demonstrate that the employee "comes 'plainly and unmistakably' within the exemption's terms." Id.

Muncy, from the outset, has failed to meet its burden of proof as it has been unable to identify which exemption it is claiming applies to Szabo. Muncy filed an Answer to Szabo's Complaint on June 8, 2021; Muncy's Answer failed to raise any Affirmative Defenses. See Docket No. 8. In fact, at no point during the course of litigation has Muncy identified what exemption it believes applies to Szabo. Muncy is asking both the Court and Szabo to essentially prove a negative, and for that reason alone this Court should hold as a matter of law that Szabo was a non-exempt employee under the FLSA and PMWA as no evidence has been offered to prove otherwise.

  **C. No Genuine Issues of Material Fact Exist with Regard to Whether Szabo Was a Non-Exempt Employee of Muncy Under the FLSA or the PMWA.**

There is no genuine issue of material fact that precludes this Court from holding that Szabo was a non-exempt employee of Muncy as a matter of law under the FLSA and the PMWA because Szabo does not satisfy the only potential exemptions at issue – the executive exemption and the learned professional exemption, nor has Muncy identified any other exemption it believes applies to Szabo. Based on the undisputed facts concerning Szabo's primary job duties, Szabo does not qualify for either the executive exemption or the learned professional exemption under either the FLSA or the PMWA.

    1. <u>Szabo does not qualify for the FLSA's executive exemption.</u>

Although Muncy has not made a showing of which exemptions, if any, apply, it may argue that Szabo was an executive within the meaning of the FLSA, making him exempt from the

4

FLSA's overtime requirement. To qualify for the executive employee exemption under Section 13(a)(1) of the Act, an employee must meet all of the following:

> § 541.100 General rule for executive employees.
>
> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
>> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal government, or $380 per week if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities;
>>
>> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>>
>> (3) Who customarily and regularly directs the work of two or more other employees; and
>>
>> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.
>
> (b) The phrase "salary basis" is defined at § 541.602; "board, lodging or other facilities" is defined at § 541.606; "primary duty" is defined at § 541.700; and "customarily and regularly" is defined at § 541.701.

29 CFR 541.100. However, Szabo does not qualify for the FLSA's executive exemption because no evidence has been offered to show that he satisfies any element of this test other than, perhaps, the first prong.

First, and most importantly, there is no dispute that Plaintiff did not have the authority to hire and fire other employees, See SOMF ¶ 21, and because this is a conjunctive test, the inquiry should really end here. However, for the sake of completeness, we will look at the rest of the regulation.

5

Pursuant to the Department of Labor's regulations, "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations further provide that the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. The Secretary's regulations further instruct courts to consider the following non-exhaustive list of factors to determine the "primary duty" of the employee:

> [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and, [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Id. Typically, employees who spend more than fifty percent (50%) of their time performing exempt work will satisfy the primary duty requirement, however, nothing in the regulations require that an employee spend more than fifty percent (50%) of his or her time performing exempt work. 29 C.F.R. § 541.700(b). It is possible that an employee who does not spend more than fifty percent (50%) of his or time performing exempt duties will still meet the primary duty requirement if other factors support that conclusion. Id.

In the instant case, the undisputed fats demonstrate that Szabo's primary job duties were non-exempt duties. According to the testimony of Megan Delahoussaye ("Ms. Delahoussaye"), Muncy's plant administrator, Szabo's position with Muncy was "calibration technician." See Delahoussaye Dep. 20:8-12; See also SOMF ¶ 5. As a calibration technician, Szabo's job duties were to calibrate all load cells that came in-house, "and he was also supposed to travel and calibrate at different customers' locations, their test beds and their dynamometers and chain testers and things like that." See SOMF ¶ 6. Szabo spent eighty percent (80%) of his time "out on the road and calibrating machines." See SOMF ¶ 7.

6

Szabo did not have any freedom from direct supervision. He received all of his assignments from Ms. Delahoussaye, who would email him his assignments "almost daily." See SOMF ¶ 17-18. Ms. Delahoussaye testified that when she would email Szabo a list of assignments, he was supposed to complete everything on the list and let her know when he had done so. See Delahoussaye Dep. At 23:17-23. Ms. Delahoussaye and Jason Fetter ("Mr. Fetter"), Muncy's Vice President, were both in positions of authority over Szabo and he was under the direct supervision of both of them. See SOMF ¶ 20. As Muncy's own production of document shows, Szabo was also required to send Mr. Fetter "daily reports" and goals for the week. See generally Exhibit K.

Szabo did not give other calibration technicians their assignments. See SOMF ¶ 16. Szabo had no authority to hire or fire other employees. See SOMF ¶ 21. Based on these facts alone, Muncy cannot carry its burden of proof that Szabo was an executive within the meaning of the FLSA, making him exempt from the FLSA's overtime requirement.

2. Szabo does not qualify for the FLSA's professional exemption.

Although Muncy has not offered any evidence to support a finding that Szabo was an exempt employee under the FLSA, the only other possibly exemption it could sensibly argue does apply is the professional exemption, though this, too, will fail. To qualify for the professional employee exemption under Section 13(a)(1) of the Act, an employee must meet all of the following:

§ 541.300 General rule for professional employees.

(a) The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal government, or

7

>> $380 per week if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities; and
>
>> (2) Whose primary duty is the performance of work:
>
>>> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
>>> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.
>
> (b) The term "salary basis" is defined at § 541.602; "fee basis" is defined at § 541.605; "board, lodging or other facilities" is defined at § 541.606; and "primary duty" is defined at § 541.700.

29 CFR 541.300.

The Department of Labor's regulation provides further guidance on who qualifies for the learned professional exemption, explaining that "an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 CFR 541.301. The learned professional primary duty test includes three elements:

> (1)  The employee must perform work requiring advanced knowledge;
> (2)  The advanced knowledge must be in a field of science or learning; and
> (3)  The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

Id. The DOL's regulation explains that "field of science of learning" does not include "the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning." 29 CFR 541.301(c).

Muncy takes the position that Szabo is an exempt employee because he, in Muncy's eyes, knows more about calibration techniques than anyone else does. Mr. Fetter testified that he would

8

classify being a lead calibration technician[2] as "substantially intellectual." According to Mr. Fetter:

> A: Substantially intellectual I would say.
>
> Q: Did you say "substantially intellectual"?
>
> A: Yes, intellectual for sure. Let me rephrase. Yes, because you have to understand the rules. You have to walk -- every situation is different for how you're going to approach each calibration. You have to have multiple disciplines. You have to be good at multiple disciplines, which includes the rotation side, the electrical side. You have to be good at the rating side and the structural side. You have to be good at operating heavy equipment. You have to be good at following the rules.
>
> So I think, and especially setting up the whole program is extremely intellectual. You needed to be able to create work instructions and procedures and understand what else is out there and still comply with applicable procedures, and I think he was very technical, so I was very impressed with what Ric did for us when he set up the program.
>
> Q: All right. So does it require knowledge in a field of science or learning?
>
> A: Absolutely. You need to know physics. You need to know D over D ratio. You need to know safety factors. You need to know hydraulics. You need to know, understand sometimes the electrical schematics and the hydraulic schematics of equipment. I mean, a lot of these things are above me. I don't know how to do a lot of these things that Ric did.
>
> Q: All right. So does it require a prolonged course of specialized intellectual instruction?
>
> A: I don't know how you would do it otherwise. If you don't have that type of background to start a, a program and to understand holistically how everything fits together, it would be a disjointed program if you did not understand all of these things, and we were lucky to find Ric who had all of these things.

See Fetter Dep. at 44:16 through 46:17. However, despite the picture Mr. Fetter painted of Szabo's qualifications, Szabo, at the time he was hired, had gained all of his knowledge through experience

---

[2] Jason Fetter is the only one to refer to Plaintiff's position with Defendant as "lead calibration technician" rather than "calibration technician."

9

in the field, not through course work as his education is limited to a high school degree and half of a year of trade school. See Exhibit L.

Pursuant to 29 CFR 541.301(d), the learned professional exemption "does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." According to Ms. Delahoussaye, being a calibration technician does not require a degree. However, Muncy does require its technicians to be certified through Muncy, which generally takes three (3) to six (6) months of training, followed by an examination. See SOMF ¶ 27.

Szabo agrees that he has specialized knowledge and that he has unique skills, however, this is not sufficient to qualify under the learned professional exemption because Szabo's knowledge and skills were not acquired through intellectual, academic instruction. In Pignataro v. Port Auth., the Third Circuit held that helicopter pilots are not learned professionals and therefore not exempt. The helicopter pilots in Pignataro required a number of certifications but no academic degrees; they did not need to spend a significant amount of time in a classroom in order to earn their certifications and nearly all of their instruction took place in the air. Pignataro, 593 F.3d at 270. The Third Circuit held that pilots' work did "not require advanced knowledge that is customarily acquired from a prolonged course of specialized instruction." Id. The District Court reasoned, and the Third Circuit affirmed, that the pilots were "merely highly trained technicians," thus did not qualify as professional employees under the FLSA. Id.

The same can be said for Szabo, and all calibration technicians at Muncy. Szabo, though very good at what he does, is still "just" a calibration technician. He did not go to school to be a calibration technician and, although he may have made suggestions to jumpstart the calibration program at Muncy, it was Mr. Fetter's decision to implement those suggestions. Most, if not all,

of Szabo's knowledge and skill in calibration was learned in the field. See Exhibit L. Szabo's knowledge and skill does not come from a prolonged course of specialized instruction and, like the pilots were in Pignataro, there can be no dispute that Szabo, as a calibration technician, was not a learned professional and was not exempt from the provisions of the FLSA.

### D. Muncy's Failure to Comply with the FLSA and PMWA was Willful.

A violation of the FLSA is considered willful and allows employees to recover for a third year of damages if the employer knew that its conduct was prohibited by the act or showed a reckless disregard for the legality of the conduct. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Whether a given set of facts constitutes willfulness is a question of fact, but can be decided as a matter of law "if there is now legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." Souryavong v. Lackawanna Cnty., 872 F.3d 122, 126 (3d Cir. 2017) (cleaned up) (explaining that willfulness is a question of fact, but it can be decided as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party). A violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the legality of the conduct. McLaughlin, 486 U.S. at 135.

In the instant matter, the decision to classify Szabo an exempt employee, to not properly track the hours Szabo worked, and to not pay Szabo any overtime compensation, was made by Mr. Fetter. Mr. Fetter is one of Muncy's Vice Presidents and, even though he is not actively an attorney, is someone who does hold himself out to be an attorney, and who, in his own words, is at least generally familiar with both the FLSA and the PMWA. See SOMF ¶ ¶ ¶ 8, 9, 10.

According to Mr. Fetter, when Szabo first began working for Muncy, Szabo was the only calibration technician, and paying him on a salary basis was "the easiest way, the most fair way"

11

to account for all of the travel. See Fetter Dep. at 16:13-19. However, when other calibration technicians started working for Muncy, they were also paid a salary, with no argument that an exemption applied:

> Q: Okay. When we were talking about earlier the travel times for the calibration technicians, you said there wasn't a method of tracking the time for any of the technicians. Was Mr. Szabo the only technician lead?
>
> A: Yes, only technician lead, only technician at the time.
>
> Q: Okay, During the course of his employment though other technicians came on?
>
> A: Yes.
>
> Q: And again I apologize if I already asked this. Were those technicians salary or hourly?
>
> A: Salary.
>
> Q: Okay. Why?
>
> A: Because we didn't, again we thought it would be more fair and easy to track. We didn't have a mechanism to track time well. Employees understand that travel takes time and that's just part of the job. It's a technical position and the type of role, it makes sense to be salary, and everybody agrees to that.
>
> Q: Okay. So the reason Mr. Szabo was paid salary is because it's your position he was exempt, but the other employees, technicians are paid salary because it makes sense?
>
> A: Can you repeat the question?
>
> Q: I'm just making sure I understand. Mr. Szabo was paid a salary because it is your position that he was an exempt employee, but the other technicians were paid a salary because it's your position and their position that it just made sense to pay them a salary?
>
> A: That's what we do. I don't understand. Can you rephrase the question again? I'm sorry.
>
> Q: Well, I'm just trying to understand why there are different reasons to pay people salaries when they are doing arguably the same job.

   A:  Right. The type of position makes sense to be salary.

See Fetter Dep. at 51:19 through 53:19.

  There is no justification as to why being a calibration technician is the type of position that "makes sense" to be salary, or if there were any attempts made to track employee time before deciding that it was too hard to do. In fact, it can be assumed that Muncy never did attempt to track employee travel time based on the following:

> **INTERROGATORY NO. 5:** State with particularity the number of hours Plaintiff worked in each calendar week during the last three years, identifying the procedure used for monitoring and recording said hours, and identifying all personnel involved in these procedures and their specific responsibilities.
>
> Ric Szabo was a salary employee. See times clocked in as already submitted, as they speak for themselves. During trips, no record was taken of his time, as he was a salaried employee as he had agreed in his offer letter and as he was paid for the 2 or so years he was employed. He never had issue with this employment relationship until after his employment.

See Exhibit B.

  As an attorney and the one who made the decision to classify Szabo as an exempt employee, it can be presumed that Mr. Fetter, as Vice President of Muncy, was aware off the consequences in the event Muncy violated the FLSA's overtime provisions. However, that did not stop him from deciding it "makes sense" to make all calibration technicians salary, and for him to decide that salary automatically means exempt.

  Considering the fact Mr. Fetter, someone with a J.D. and an M.B.A. and still holds himself out to be an attorney even though his license is not active, made the decision that Szabo is an exempt employee and continues to make the decision that Muncy's calibration technicians are salary employees who are not paid overtime, Muncy's violations of the FLSA can only be considered willful.

## IV. CONCLUSION

For these reasons, Plaintiff, Ric Szabo, respectfully requests that this Honorable Court grant his motion for partial summary judgment and hold that Szabo is a non-exempt employee under the FLSA and the PMWA, with damages, including liquidated damages, to be determined by this Court at trial.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Mary Kramer*
    Murphy Law Group, LLC
    Mary Kramer, Esq.
    Eight Penn Center, Suite 2000
    1628 John F. Kennedy Blvd.
    Philadelphia, PA 19103
    mkramer@phillyemploymentlawyer.com
    Attorneys for Plaintiff

Dated: September 30, 2022

## **CERTIFICATE OF SERVICE**

I, Mary Kramer, Esq. certify that on September 30, 2022, I caused a true and accurate copy of the foregoing to be filed by ECF filing, which will send notification of such filing to the following counsel:

Gregory A. Stapp
Attorney I.D. #78247
Stapp Law, LLC
153 West Fourth Street, Suite 6
Williamsport, PA 17701
TEL: 570-326-1077
gstapp@stapplaw.net
*Attorney for Defendant*

  /s/ Mary Kramer
Mary Kramer, Esq.

Dated: September 30, 2022