## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANDI CRAPPELL and** | : | |
| **RIC SZABO,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 4:21-CV-00468** |
| | : | |
| **MUNCY INDUSTRIES, LLC,** | : | |
| **d/b/a MUNCY MACHINE &** | : | |
| **TOOL CO., INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendant, Muncy Industries, LLC, d/b/a Muncy Machine Tool Co., Inc., by

and through their attorney,  Gregory A. Stapp, Esquire hereby submits this

Memorandum of Law in support of their Motion for Summary Judgment.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

STANDARD OF REVIEW..................................................................................... 8

ARGUMENT ......................................................................................................... 10

    A. Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C.A.
    §201 *et seq.* fail as a matter of law as a result of entering into a
    contract with Muncy Industries, LLC to work a fluctuating work week
    in accordance with the provisions of the Fair Labor Standards Act. ........... 10

    B. Plaintiff's claims under the Pennsylvania Minimum Wage Act, 43
    P.S. § 333.113 fail as a matter of law under 43 P.S. § 231.43(c) and
    §231.43(d)(3). ............................................................................................. 14

CONCLUSION ...................................................................................................... 19

CERTIFICATE OF SERVICE.............................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 9, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................ 8

*Chanel, Inc. v. Italian Activewear of Fla*, 931 F.2d 1472 (11th Cir. 1991)............. 9

*Chevalier v. General Nutrition Centers, Inc.* 656 Pa. 296 (2019) ................... 15, 16

*Chock Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202 (2d Cir. 1998) ....... 9, 14, 16

*Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2nd Cir. 1993).......... 9

*Matsushita Elec. Indus. Co. Ltd. v. Zenith*, 475 U.S. 574 (1986) ........................ 8, 9

*McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930 (11th Cir. 1987) ..... 10

*Peppers v. Coates*, 887 F.2d 1498 (11th Cir. 1999).............................................. 10

*Ryder Int'l Corp. v. First Am. Nat'l Bank*, 934 F.2d 1521 (11th Cir. 1991) .......... 10

*Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1583 (11th Cir. 1991............ 9

*Walker v. Darby*, 911 F.2d 1573 (11th Cir. 11th Cir. 1990) .................................... 10

*Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1984)................................................ 11

*Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992)...................................... 10

**Statutes**

Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*).................................... 1, 10, 11

Pennsylvania Minimum Wage Act (43 P.S. § 333, *et seq.*).................. 14, 15, 19, 20

34 Pa. Code § 231 *et seq.* ........................................................................... 18, 19

29 C.F.R. § 778 402 ...................................................................................... 16

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 1

Fed. R. Civ. P. 56(c).......................................................................................... 8

Middle District Cout Local R. Civ. P. 56.1...................................................... 1

# I.    INTRODUCTION

On March 16, 2021, Plaintiffs Shandi Crappell and Ric Szabo initiated this litigation by filing a Complaint for overtime pay under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  The Complaint contained the following counts:

> i.  Count I:  Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*, Failure to Pay Overtime Compensation
>
> ii.  Count II:  Pennsylvania Minimum Wage Act, 43 P.S. § 333, *et seq.*, Failure to Pay Overtime Compensation

Following a compulsory mediation, Shandi Crappell resolved her claims with the Defendant, and they were dismissed with prejudice on May 11, 2022.  Defendant filed an Answer denying the allegations contained in Counts I and II of Plaintiffs' Complaint on June 8, 2021.  The parties have engaged in discovery since the initiation of the litigation.

The Defendant now files this Motion for Summary Judgment in accordance with Fed.R.Civ.P. 56 and Local Rule 56.1.

# II.    FACTUAL BACKGROUND

On or about January 8, 2018, Jason Fetter and Ric Szabo met to discuss the terms of employment with Muncy Industries, LLC.  Mr. Fetter, on behalf of

1

Muncy Industries, LLC agreed with Mr. Szabo to create a Calibration Department at Muncy Industries, LLC with the assistance of Muncy Industries, LLC, and Jason Fetter.

The parties agreed that Mr. Szabo would be paid a salary of $37,000.00 per year ($37,000.00 for working for 40 or more hours a week) to establish the Calibration Department under the following additional parameters: "Muncy Industries, LLC intends to increase your salary, at Muncy's sole discretion, based on the following criteria:

> i. Every Thirty (30) E4 calibrations that you successfully perform, Muncy will increase your salary by $2,000 until your gross salary is over $50,000;
>
> ii. After your gross salary is over $50,000, we will provide you a bonus of $500 for every twenty (20) E4 calibrations performed by Muncy; Muncy may review, revise, or cancel this bonus program at any time, in its sole discretion. (See the bona fide contract between the parties to the Defendant's Statement of Undisputed Facts at Exhibit A.)

Mr. Szabo accepted this offer of employment from Muncy Industries, LLC on or about January 8, 2018, and began his employment with Muncy Industries, LLC. Mr. Szabo agrees that Muncy Industries, LLC paid him in accordance with

this contract throughout his employment with Muncy Industries, LLC. Mr. Szabo admitted that the parties agreed to what was marked Deposition Exhibit Number 2 (attached to the Statement of Undisputed Facts as Exhibit A) at Mr. Szabo's deposition stating that he was to be salaried for $37,000.00 for **working 40 or more hours per week with increases in salary as discussed above.**

The parties agree that Mr. Szabo did receive several bonuses throughout 2018 and 2019 as well as a raise in salary based upon his performance of calibrations using the fluctuating work week standard where both Mr. Szabo and the Defendant agreed that the work to be performed in the calibration field would require working outside a 40-hour week from time to time due to the type of work and the traveling involved. With regard to Exhibit A, Mr. Szabo testified as follows:

> Q: Okay. Now let me show this page, because this seems to lay out some—something between you and Mr. Fetter about your pay. So I'm showing you what has been marked Bates Document 79, and you know, this one I think I will mark as an exhibit, this would be Exhibit No. 2 to the deposition, and I'll get you a clean copy. But do you recognize this document, Mr. Szabo?
>
> A: I think that was on my offer letter when I got employed.

Q: So, this is the – this is giving (*sic* given) to you when you were hired on January of 2018.

A: That's correct.

Q: And it looks like you're going to receive a salary increase of $2000 for "every 30 E4 calibrations you successfully perform;" is that correct?

A: That is correct.

Q: So, does that mean that when you got the salary increase by July of 2018, that you had completed 30 calibrations by that point?

A: Yes, that's true.

Q: This also seems to indicate that even after your salary is over $50,000, they are going to provide you a bonus for $500 for every 20 E4 calibrations you perform; am I reading that correctly?

A: That is correct. (Deposition Transcript dated 6/30/2022, Page 35, Lines 11-25, Page 36, Lines 1-16). (See this testimony attached to the Statement of Undisputed Facts at Exhibit B).

Mr. Szabo also admitted that he was receiving $47,000 a year in salary by April 2019. He testified as follows:

Q: I don't have any official documentation other than this handwritten note, but it looks like someone wrote a note on April 28,

4

2019, to increase your salary to $47,000. Did you get an increase to $47,000, based on calibrations in April of 2018 (sic 2019)?

A: I did do that. That is actually my handwriting and my note that I sent to Jason.

Q: Ok. And did they honor it? ... And is it your recollection that this request by you was honored to increase it to the next $2,000 level?

A: It was honored, yes sir.

**Q: So, if I understand the testimony so far at least it looks like that Muncy Industries honored that deal that we just showed you that has been marked Exhibit Number 2 regarding your salary and your pay rate with them; is that correct?**

**A: That is correct.** (Deposition Transcript dated 6/30/2022, Page 38, Lines 11-25, Page 39, Lines 1-8). (See this testimony attached to the Statement of Undisputed Facts at Exhibit C).

Mr. Szabo went on to testify that in addition to the salary and bonuses he received in accordance with his contract for employment that the employer also purchased his vehicle for him to use at work. They also provided him with moving expenses that he was never required to reimburse to the employer. (Deposition Transcript dated 6/30/2022, Pages 39-40) (See this testimony attached to the Statement of Undisputed Facts at Exhibit D).

The parties agree that Muncy Industries, LLC, and Ric Szabo entered into a bona fide individual contract for payment of the substantially irregular hours of work that Mr. Szabo would be required to perform in order to create the calibration program at Muncy Industries, LLC. The parties agree that neither Mr. Szabo nor Muncy Industries, LLC could control or anticipate with any degree of certainty the number of hours that Mr. Szabo would be required to work from week to week in order to create the calibration department at Muncy Industries, LLC. The parties agree that Muncy Industries, LLC paid Mr. Szabo in accordance with the contract throughout his employment.

The parties also agree that Mr. Szabo never requested to paid overtime for any hours he worked while he was employed with Muncy Industries, LLC. Furthermore, Mr. Szabo agrees that the decision to work during his lunch hour and after hours was his decision.

Q: Let me ask you this, going back to how this dynamic worked, at least the way you are describing it, did you ever try to say to Mr. Fetter or anyone else at Muncy Industries, like Kimberly Bunting or Megan Delahoussaye, that I don't want to travel this weekend on Saturday or Sunday, can we move it to Monday morning, did you ever have a time when you tried to do that?

A: **No, sir.** … (Deposition Transcript dated 6/30/2022, Page 18, Line 25, Page 19, Lines 1-8). (See this testimony attached hereto at Exhibit G).

Q: And if you're at an employer's site and you're working on a test bed as lunch approaches, were there many times that you would just go ahead and finish that work to make sure it got done?

A: Oh yes.

Q: When you did that, that was your decision to keep working through the lunch hour, correct?

A: **It was, yes sir.** (Deposition Transcript dated 6/30/2022, Page 20, Lines 22-25, Page 21, Lines 1-4). (See this testimony attached to the Defendant's Statement of Undisputed Facts at Exhibit H).

A: That's okay. Just know that because I was salaried, that's what was expected of me and I knew that …

Q: So when you were hired you understand because you were a salaried employee, you were not going to get paid extra time if you worked past five or worked through the lunch hour?

A: **I understood that.** (Deposition Transcript dated 6/30/2022,

Page 21, Line 25 and Page 22, Lines 1-2; 7-11). (See Pages 21 and 22

of the testimony attached hereto at Exhibit I).

The parties agreed at their meeting prior to employment that the contract

with salary plus bonuses and pay raises compensated Mr. Szabo for work done

both below and above the statutory weekly limit on non-overtime hours.


## III.    STANDARD OF REVIEW

Summary judgment may only be granted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).

The "purpose of summary judgment is to pierce the pleadings and to assess the

proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986) (quoting the Advisory Committee's note to Fed. R. Civ. P. 56).

"[The] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of the [record before the court] which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to establish, by going beyond the pleadings, that there is indeed a genuine issue as to the material facts in its case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). A dispute of material fact "is 'genuine' ... [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The court neither weighs evidence nor resolves material factual issues, but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable fact finder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132.

In a contract dispute, when the contractual language is unambiguously in conformity with one side's interpretation, summary judgment is appropriate, *see Chock Full O'Nuts Corp. v. Tetley, Inc.,* 152 F.3d 202, 204 (2d Cir.1998), and extrinsic evidence of the contracting parties' intentions cannot be considered in interpreting the contract, *see Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993).

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). The Court must avoid weighing conflicting evidence. See *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

## IV.    ARGUMENT

> **A. Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C.A. §201 *et seq.* fail as a matter of law as a result of entering into a contract with Muncy Industries, LLC to work a fluctuating work week in accordance with the provisions of the Fair Labor Standards Act.**

29 U.S.C.A. § 207(f) of the Fair Labor Standards Act states, "No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) **if such employee is employed pursuant to a bona fide**

**individual contract**, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified." 29 U.S.C.A. § 206(a) states, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

> **(1)** except as otherwise provided in this section, not less than--
> **(A)** $5.85 an hour, beginning on the 60th day after May 25, 2007;
> **(B)** $6.55 an hour, beginning 12 months after that 60th day; and
> **(C)** $7.25 an hour, beginning 24 months after that 60th day;"

"It is no doubt true, as petitioner contends, that the purpose of respondent's arrangement with its employees was to permit as far as possible the payment of the same total weekly wage after the Act as before. But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act." *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 630 (1942)

**But it is agreed that as a matter of law employer and employee may establish the 'regular rate' by contract.** *Id.* at 631. In the Walling case, the question was whether the amount of the wages contemplated compensation for overtime as well as basic pay. "But the Act does not prohibit paying more; it requires only that the overtime rate be 'not less than' 150% of the basic rate. It is also true that under this formula the overtime rate per hour may vary from week to week. But nothing in the Act forbids such fluctuation." *Id.* at 632.

The Supreme Court went on to state, "But the guaranty contract in this case carries out the intention of the Congress. It specifies a basic hourly rate of pay and not less than time and a half that rate for every hour of overtime work beyond the maximum hours fixed by the Act." *Id.* at 634. In the present case, the Plaintiff's original salary was $37,000.00. This amount divided by 52 weeks at 40 hours a week totals $17.79 an hour. This is well in excess of the minimum wage rate in the Commonwealth of $7.25 an hour.

It is clear from the evidence in the record, namely the contract offered as Exhibit A to the Statement of Undisputed Facts that the parties in this case entered into a bona fide individual contract for employment, which is specifically addressed in U.S.C.A. § 207(f) of the Fair Labor Standards Act. Mr. Szabo agreed that he entered into this contract and that he understood he was a salaried employee that would have to work more than 40 hours a week on certain work weeks. He

admits to being paid bonuses and salary increases in accordance with the bona fide individual contract. Mr. Szabo's own testimony was that he was being paid as much as $47,000.00 a year when he left his employment with Muncy Industries, LLC voluntarily.

$47,000 a year in salary equates to an hourly wage of $15.06 an hour for sixty hours a week over the course of a full year. This number presumes that Mr. Szabo worked 60 hours a week every week which he has not testified to or alleged. Clearly, the agreed upon salary throughout Mr. Szabo's employment was in excess of the minimum hourly rate under § 206.

The Supreme Court in the *Wailing* case concluded their discussion as follows: "When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours." *Id.* at 635 "This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and

automobiles and insurance. Congress has said nothing to prevent this desirable objective. This Court should not."

In cases involving contracts for wages, the Third Circuit has stated, "Despite contract ambiguity, summary judgment still may be appropriate if the moving party would prevail under any reasonable interpretation of the contract." *See Chock Full O'Nuts Corp.,* 152 F.3d at 204. In the present case, there is no ambiguity whatsoever. The parties agree that they had a bona fide contract for employment and that Muncy Industries, LLC fulfilled its obligations under that contract. The evidence also clearly establishes that while Mr. Szabo's work week may have fluctuated from week to week, his salary was in excess of the minimum hourly rate and that he agreed to a salary because he knew the work would require a fluctuating work week from time to time. When Mr. Szabo did work a fluctuating hours, he did it by his own choice.

Based upon the evidence in the record, this Honorable Court must find that Plaintiff's claims under the Fair Labor Standards Act fail as a matter of law.

**B.      Plaintiff's claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.113 fail as a matter of law under 43 P.S. § 231.43(c) and §231.43(d)(3).**

The Plaintiff Ric Szabo has alleged in Count II that the Muncy Industries, LLC violated the Pennsylvania Minimum Wage Act in failing to pay him overtime.

However, as stated above, Mr. Szabo entered into a contract for employment with Muncy Industries, LLC in compliance with Section 231.43(d)(3).

In the case of *Chevalier v. General Nutrition Centers, Inc.* 656 Pa. 296 (2019), the Supreme Court of Pennsylvania discussed the FWW method or Fluctuating Work Week method under the FLSA with the PMWA. Subsection 231.43(b) of the Pennsylvania Minimum Wage Act provides explicit instruction on the calculation of overtime for employees paid on a day or job rate basis, dictating that the regular rate "is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked" and that the employee is "then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek." As the parties have emphasized, this provision adopts the 0.5 Multiplier for day and job rates. GNC argues that this incorporation demonstrates the Secretary's acceptance of the general concept of the FWW Method, whereas Plaintiffs cite this provision as evidence of the Secretary intentionally choosing to adopt the Federal Regulation applying the 0.5 Multiplier to day and job rate compensation arrangements but refusing to adopt it for employees with fixed salaries and fluctuating hours. Plaintiffs emphasize that Pennsylvania adopted federal Section 778.112 verbatim, applying the 0.5 Multiplier to day and job rates, **but not Section 778.114 applying it to salaried employees with fluctuating hours.**

In the *Chock* case, the Supreme Court of Pennsylvania also discussed the idea of a contract for employment. Subsection 234.43(c) provides the following "example" of such a contract, with instructions on the calculation of overtime: For example, where neither the employee nor the employer can either control or anticipate with a degree of certainty the number of hours the employee must work from week to week, where the duties of the employee necessitate significant variations in weekly hours of work both below and above the statutory weekly limit on non-overtime hours, or where the substantially irregular hours of work are not attributable to vacation periods, holidays, illness, failure of the employer to provide sufficient work, or other similar causes, and the contract or agreement:

    (1) Specifies a regular rate of pay of not less than the minimum hourly rate and compensation at not less than 1 1/2 times the rate for hours worked in excess of the maximum workweek.

    (2) Provides a weekly guaranty of pay for not more than 60 hours based on the rates so specified.

Subsection 231.43(c) adopts the *Belo* arrangement, with language similar to that present in Section 207(f) of the FLSA and 29 C.F.R. § 778.402 of the Federal Regulations. As do the federal provisions, Subsection 231.43(c) provides a permissible overtime compensation scheme for salaried employees working fluctuating hours." The question then becomes whether the Secretary's adoption of

the *Belo* arrangement and its silence in regard to the formula adopted by the High Court in *Missel,* and later incorporated into federal Section 778.114, should be deemed a rejection of the FWW Method for salaried employees working fluctuating hours.

In full, Subsection 231.43(d) provides as follows:

(d) No employer may be deemed to have violated these §§ 231.41 - 231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41:

> (1) In the case of an employee employed at piece rates, is computed at piece rates not less than 1 1/2 times the bona fide piece rates applicable to the same work when performed during non-overtime hours.

> (2) In the case of an employee's performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than 1 1/2 times the bona fide rate applicable to the same work when performed during non-overtime hours.

(3) Is computed at a rate not less than 1 1/2 times the rate established

by the agreement or understanding as the basic rate to be used in computing

overtime compensation thereunder; and if the average hourly earnings of the

employee for the workweek, exclusive of payments described in subsection

(a)(1)-(7), are not less than the minimum hourly rate required by applicable

law and if extra overtime compensation is properly computed and paid on

other forms of additional pay required to be included in computing the

regular rate.

34 Pa. Code § 231.43(d).

Pennsylvania's Regulation Subsection 231.43(d) expressly approves of an

employment arrangement for overtime compensation involving **"an agreement or**

**understanding arrived at between the employer and the employee before**

**performance of the work" in the following discrete situations:** (1) "an

employee employed at piece rates;" (2) an employee "performing two or more

kinds of work for which different hourly or piece rates have been established;" or

**(3) in cases involving an established "basic rate."** Each provision requires

overtime compensation of "1 ½ times" the relevant rate. Notably, the basic rate

subsection of Section 231.43(d)(3) was relied upon by the employers in the various

federal cases cited by the parties, which ultimately rejected the use of the 0.5

Multiplier. *See Verderame*, 31 F.Supp. 3d 702; *Foster*, 285 F.R.D. 343; *Cerutti*, 777 F.Supp. 2d 920.

In the present case, Ric Szabo understood that the establishment of a calibration department at Muncy Industries, LLC would require working different hours some weeks. As a result of this understanding, the parties agreed to a salary that would pay him in accordance with both federal and state law. Both the starting salary of $37,000.00 and the ending salary of approximately $50,000.00 were payment in excess of the maximum work week applicable under § 231.47 of the Pennsylvania Minimum Wage Act.

As the parties are allowed to contract for employment in a situation such as the present one, the Plaintiff has failed as a matter of law to establish that the Defendant violated the PMWA.


## V.    CONCLUSION

Under the Fair Labor Standards Act an employer may contract with his employees to pay them wages, so long as the wage rate equals or exceeds the minimum required by the Act. In the present case, there is no dispute that the parties entered into a contract for employment for Mr. Szabo to work a fluctuating work week to create the calibration department at Muncy Industries, LLC. As the

wage rate that was agreed upon exceeds the minimum required by the Act, the Plaintiff's claim fail as a matter of law.

In accordance with § 231.43(d) No employer may be deemed to have violated these §§ 231.41 - 231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41. As the rate agreed upon by the parties in this case and paid by Muncy Industries, LLC to Ric Szabo is in excess of the maximum workweek applicable under § 231.41, the Plaintiff's claims under the Pennsylvania Minimum Wage Act fail as a matter of law.

Respectfully submitted,
**STAPP LAW, LLC**

Date: October 12, 2022    By:    /s/ *Gregory A. Stapp*
Gregory A. Stapp, Esquire
Attorney I.D. #78247
153 West Fourth Street, Suite 6
Williamsport, PA 17701
Email: Gstapp@stapplaw.net
Tel. 570.326.1077
*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE
## WITH LOCAL RULE 7.8(b)(2)

It is hereby certified that Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment contains 4,434 words (exclusive of tables of contents and authorities, signatures, and this certificate), according to the word processing system used to prepare it, and that the brief therefore complies with the Local Rule.

/s/ Gregory A. Stapp
Gregory A. Stapp, Esquire

# CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2022, I electronically filed the foregoing **Defendant's Memorandum of Law in Support of the Motion for Summary Judgment** with the Clerk of Court by using the CM/ECF filing system which will send notification of electronic copy to the following:

Mary Kramer, Esquire
Murphy Law Group, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
Email: mkramer@phillyemploymentlawyer.com
*Counsel for Plaintiffs*

/s/ Gregory A. Stapp
Gregory A. Stapp, Esquire