# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RIC SZABO,

       Plaintiff,

    v.

MUNCY INDUSTRIES, LLC,

       Defendant.

No. 4:21-CV-00468

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 5, 2024

## I.    BACKGROUND

In March 2021, Ric Szabo filed a complaint against Muncy Industries, LLC ("Muncy"), alleging a failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act.[1] Muncy filed an answer in June 2021.[2] In September 2022, Szabo moved for partial summary judgment on the issue of his status as a covered employee under FLSA, and Muncy moved for summary judgment.[3] I granted Szabo's motion and denied Muncy's in March 2023.[4] I scheduled trial for March 2024 and set a briefing deadline of November 24, 2023 for any motions in limine or supporting briefs.[5]

---

[1]    Doc. 1.
[2]    Doc. 8.
[3]    Docs. 35, 36.
[4]    Docs. 47, 48.
[5]    Doc. 67.

In November 2023, Szabo filed four motions in limine.[6] The first motion in limine seeks to preclude testimony or evidence relating to Civil Action 2020-1714, a currently pending civil action between the parties in state court.[7] The second moves to preclude Muncy from offering the testimony of a previously unidentified witness at trial.[8] The third seeks to preclude introduction of any evidence or reference to drug test results at trial.[9] And the fourth seeks to preclude Muncy from introducing evidence or testimony concerning certain expense reimbursements made by Muncy during Szabo's employment.[10]

The motions are now ripe for disposition. For the reasons stated below, Szabo's motion in limine to preclude evidence relating to Civil Action 2020-1714 is granted in part and denied in part, and Szabo's motion in limine to preclude the testimony of undisclosed witnesses is granted as to witness Phil Chant. The remaining motions in limine are granted in full.

## II.   LAW

"Motions in limine are made prior to trial or the presentation of evidence in order to aid the clear presentation of evidence."[11] Motions in limine are typically made "for the purpose of prohibiting opposing counsel from mentioning the

---

[6]   Docs. 69, 71, 72, 75.
[7]   Doc. 72.
[8]   Doc. 69.
[9]   Doc. 75.
[10]   Doc. 71.
[11]   *United States v. Ramsey*, No. 19-268, 2021 U.S. Dist. LEXIS 192115, at *1 (E.D. Pa. Oct. 5, 2021).

existence of . . . matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[12] They are also "designed to narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions."[13]

The presumption under the Federal Rules of Evidence is that relevant evidence is admissible.[14] Admissible evidence must be relevant under Federal Rules of Evidence 401 and 403. Rule 401's test for relevant evidence is expansive and permissive.[15] It admits evidence with "any tendency to make a fact more or less probable than it would be without the evidence" so long as "the fact is of consequence in determining the action." Federal Rule of Evidence 403 provides the second generic hurdle to admissibility. Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

---

[12]   *United States v. Davis*, 208 F.Supp. 3d 628, 632 (M.D. Pa. 2016) (citing *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 (5th Cir. 1977)).

[13]   *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

[14]   Fed. R. Evid. 402.

[15]   *See United States v. Leake*, 396 F.App'x 898, 903 (3d Cir. 2010) (quoting *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2010) ("Rule 401's definition of relevance is 'very broad' and 'does not raise a high standard.'")).

## III.   ANALYSIS

Szabo submits four motions in limine. I grant all four, except to the extent that the evidence Muncy seeks to admit becomes relevant for impeachment purposes. I also limit my ruling on Szabo's motion to preclude the testimony of undisclosed witnesses to the testimony of Phil Chant.

### A.   Civil Action 2020-1714

Szabo's first motion in limine seeks to exclude the introduction of evidence or testimony relating to Civil Action 2020-1714, pending in the Court of Common Pleas of Northumberland County.[16] In that action, Muncy has sued Szabo and Chant Engineering, Szabo's new employer, for a breach of contract claim stemming from Szabo's non-compete agreement, tortious interference with a contractual relationship, and tortious interference with a prospective contractual relationship.[17] While Muncy may cross-examine Szabo about one piece of evidence relating to Civil Action 2020-1714 for narrow impeachment purposes, this does not justify introducing any other evidence relating to that case.

Muncy spends much of its briefing recounting facts relating to the other civil lawsuit between Muncy and Chant in the state trial court, without explaining why or how these facts are relevant, for impeachment purposes or otherwise.[18] I see no

---

[16] Doc. 72.
[17] Doc. 73 at 2; Doc. 72-2.
[18] Doc. 81 at 2-12; Doc. 83 at 2-12.

reason for the issues being litigated in Civil Action 2020-1714 to be rehashed at trial here. In this FLSA lawsuit, the circumstances around the other case have minimal relevance. Whether or not Szabo violated his non-compete agreement or was complicit in Chant's efforts to interfere with Muncy's business relationships simply has no bearing on whether Muncy improperly failed to provide Szabo with overtime pay. Smuggling in the facts of this unrelated lawsuit will only confuse the issues in Szabo's FLSA case, waste inordinate time, and cause Szabo undue prejudice by impugning his character. As explained below, unless Muncy actually justifies the relevance of evidence relating to its other civil case, I agree that Rule 403 would bar the admission of the three pieces of evidence that Muncy seeks to introduce.

First, Muncy seeks to cross-examine Szabo on an email sent from his email address to Muncy's clients. Allegedly, Szabo "disclosed [in the email] that he was no longer employed by Muncy Industries and attempted to disparage Muncy Industries' reputation with their customers,"[19] but the email was actually written by Chant.[20] Because Szabo states in his interrogatory that it was his idea to write the email but admits in his deposition that Chant told him to do so, Muncy argues that Chant's testimony is relevant to Szabo's impeachment.[21]

---

[19] *Id.* at 3-12.
[20] *Id.* at 10.
[21] *Id.* at 14-15.

Federal Rule of Evidence 607 permits "any party to attack a witness's credibility" through impeachment. "[Rule] 607 allows a party to impeach witnesses by contradicting their testimonies."[22] "Impeachment by contradiction is a means of 'policing the [witness's] obligation to speak the truth in response to proper questions.'"[23] To be admissible, there must be a meaningful contradiction between the prior statement and the witness's testimony.[24]

While courts have attached less weight to interrogatory statements in other contexts,[25] for purposes of impeachment by contradiction, there is no reason to hesitate in relying on them. Interrogatories, although they are generally drafted by lawyers, still represent the statements of the litigants who attest to their veracity under the penalty of perjury.[26] In Szabo's case, the direct inconsistency between his interrogatory and deposition testimony leaves no room for doubt; the contradiction is meaningful and relevant. Because Szabo's statements are squarely in contradiction

---

[22] *Primus v. Target Corp.*, 532 F.App'x 314, 315 (3d Cir. 2013) (citing *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009)).

[23] *Gilmore*, 553 F.3d at 272; *Wharton v. Vaughn*, No. 01-6049, 2012 U.S. Dist. LEXIS 115598, at *142 (E.D. Pa. Aug. 16, 2012) ("[T]he dissimilarities or omissions must be substantial enough to case doubt on a witness's testimony to be admissible as prior inconsistent statements.") (quoting *Commonwealth v. Bailey*, 469 A.2d 604, 611 (Pa. Super. 1983)), *rev'd in part on other grounds*, No. 13-9002, 722 F.App'x 268 (3d Cir. Jan. 11, 2018)).

[24] *See Morgan v. Covington Twp.*, 648 F.3d 172, 181 n. 7 (3d Cir. 2011).

[25] *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 166 ("We find that an interrogatory response of a co-defendant who is seeking to avoid liability lacks the 'circumstantial guarantees of trustworthiness' that are contemplated by Rule 803(24) of the Federal Rules of Evidence.").

[26] Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."), 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections."); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (sanctioning party with dismissal for false interrogatory answers given under oath).

with one another, at least one of his sworn statements must be false, and that has a significant bearing on Szabo's credibility. Therefore, I deny the motion in limine to preclude any reference to materials involved in Civil Action 2020-1714 as it pertains to Szabo's impeachment regarding this email specifically.

I note, however, that the email is entirely irrelevant to this case; Szabo may only be cross-examined on it for purposes of impeaching his credibility. The email itself, as well as Chant's testimony about it, need not be introduced to show that Szabo contradicted himself. Muncy may not delve into the email's contents beyond what is necessary for this purpose, nor may it rely on impeachment as a back-door method of attacking Szabo's character due to the email's pugnacious contents. In this regard, I note that permitting cross-examination on Szabo's inconsistent statements creates the possibility of unfair prejudice. A limiting instruction stating that Szabo's testimony about the email may only be considered as it relates to his credibility should be sufficient to remedy this prejudice. While some unfair prejudice may still result, the probative value of Szabo's statements is too high to exclude this avenue of impeachment entirely.[27]

Second, Muncy attempts to justify testimony that Szabo filed this lawsuit because Chant told him to do so, and for Chant's company to retaliate against Muncy for its lawsuit. But "[w]here a plaintiff has a true cause of action, his motivation in

---

[27] *See United States v. Bailey*, 840 F.3d 99, 130 (3d Cir. 2016) ("Although this potential for unfair prejudice is significant, so too was the probative value of this evidence.").

filing suit is irrelevant."[28] "[T]he nature of Plaintiffs' motivation in filing th[e] action . . . is irrelevant to whether Defendants violated the FLSA."[29] Nor is any impeachment value of this testimony apparent, whatever its form.

Muncy protests that cross-examining Szabo on his motivation for filing suit shows Szabo's bias in favor of Chant.[30] But it is unclear how Szabo can be biased towards someone who is not a party to his lawsuit. Szabo's overtime claims are based solely on facts relating to his employment at Muncy, arising before his employment with Chant. In this context, it is unclear what being biased towards Chant even means. If Muncy means to suggest that Szabo wants to win his lawsuit to appease Chant, this unsubstantiated basis for impeachment still does not differentiate Szabo from any other plaintiff. Showing that a plaintiff is biased towards winning his own case, whatever the reason, does not create a basis for impeachment because it does not "discredit" or "reduce the effectiveness" of his testimony.[31]

Third, Muncy alleges that Chant is paying Szabo's legal fees in the other Civil Action and seeks to introduce this fact to impeach Szabo. But impeach him how? Again, Szabo cannot be biased towards Chant in a case to which Chant is not a party, nor is Chant paying Szabo's legal fees in *this* matter.

---

[28]   *Ash v. GAF Corp.*, 723 F.2d 1090, 1095 (3d Cir. 1983).

[29]   *Haught v. U.S. Eng'g Contrs. Corp.*, No. 07-80436, 2009 U.S. Dist. LEXIS 2255, at *7 (S.D. Fla. Jan. 6, 2009).

[30]   Doc. 81 at 14.

[31]   *Mulero v. Walsh*, No. 3:15-CV-1406, 2018 U.S. Dist. LEXIS 32237, at *17 n.10 (M.D. Pa. Feb. 28, 2018) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)).

In sum, Muncy may still cross-examine Szabo on the limited subject of his inconsistent statements about the email sent to Muncy's clients, but only for the purpose of demonstrating Szabo's untruthfulness. This subject may not be discussed for any other purpose. Barring this exception, Szabo's motion in limine to preclude any evidence or testimony about Civil Action 2020-1714 is granted.

### B.    Undisclosed Witness Phil Chant

On September 20, 2023, after the deadlines had passed for Muncy to disclose its witnesses, it informed Szabo that it intended to offer the testimony of Phil Chant, Szabo's current employer.[32] Szabo now moves to preclude Muncy from introducing the testimony of Chant and any other undisclosed witnesses.[33]

Under Federal Rule of Civil Procedure 26(a), parties must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." "[T]he Federal Rules of Civil Procedure compel[] transparency and fair dealing by parties,"[34] because "the hallmarks of discovery in federal court are, and should be, openness, transparency, and candor. Gamesmanship, ambush, surprise, and concealment have no place in

---

[32]   Doc. 69 at 1-4.

[33]   I only rule on the admissibility of Chant's testimony because I lack the information to rule upon any other undisclosed witness.

[34]   *Ely v. Cabot Oil*, No. 3:09-CV-2284, 2016 U.S. Dist. LEXIS 165595, at *6 (M.D. Pa. Feb. 17, 2016)

federal practice."[35] When there has been a late disclosure of witnesses, "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."[36] "Where a party has not satisfied this burden of proving substantial justification or harmlessness, the Court is vested with discretion to exclude witnesses or exhibits that were never previously disclosed during pre-trial litigation pursuant to Rule 37(c)(1)."[37]

Rather than articulating some justification for this delay,[38] Muncy attempts to shoehorn much of this evidence into impeachment exceptions, to which Rule 26's deadlines would not apply.[39] In fact, Muncy appears to contest this motion in limine on the same basis as Szabo's motion in limine regarding Civil Action 2020-1714, since its brief on the civil action is a copy-and-paste job.[40] So all of the matters to which Muncy seeks Chant to testify—including Szabo's motivation for filing suit

---

[35] *Styer v. Frito-Lay, Inc.*, No. 1:13-CV-833, 2015 U.S. Dist. LEXIS 33466, at *5 (M.D. Pa. Mar. 18, 2015).

[36] Fed. R. Civ. P. 37(c)(1).

[37] *Ely*, 2016 U.S. Dist. LEXIS 165595, at *9 (citing *Klatch-Maynard v. Sugarloaf Twp.*, No. 3:06-CV-0845, 2011 U.S. Dist. LEXIS 54679, at *5 (M.D. Pa. May 23, 2011)).

[38] Because Muncy only attempts to admit Chant's testimony through impeachment rationales, I have no need to determine whether or not Muncy's testimony would otherwise be admissible. *See id.* at 9 (enumerating factors used to determine whether evidence should be excluded for a party's failure to comply with its discovery obligations) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). In any case, Chant's testimony would be inadmissible under Federal Rule of Evidence 403 even had his identity been disclosed within the applicable deadline.

[39] Fed. R. Civ. P. 26(a)(3)(A) ("[A] party must provide to the other parties and promptly file the following information about the evidence that it may present at trial *other than solely for impeachment*") (emphasis added); *Surman v. Payne*, No. 3:19-216, 2023 U.S. Dist. LEXIS 58728, at *63 (W.D. Pa. Mar. 30, 2023) ("Rule 26(a) does not require parties to disclose evidence that is to be used solely for impeachment.").

[40] *Compare* Doc 81 and Doc. 83.

and Chant's alleged payment of legal fees in Civil Action 2020-1714—do not justify the introduction of Chant's testimony for the same reasons. The only valid basis for impeachment, relating to Szabo's inconsistent statements over his authorship of the email, does not require Chant's testimony on the matter. Rather than introducing this extrinsic evidence, Muncy may simply cross-examine Szabo. Therefore Szabo's motion in limine to preclude the introduction of Chant's testimony is granted in full. However, Muncy may move to admit Chant as an impeachment witness if this proves necessary based upon Szabo's trial testimony.[41]

Finally, while Szabo moves to preclude the testimony of "any" of Muncy's undisclosed witnesses, this Court cannot grant Szabo's motion with respect to any undisclosed witness whose identity remains unknown. I lack sufficient information to evaluate the admissibility of an undisclosed witness's testimony for impeachment purposes. Therefore, Szabo's motion is granted as to witness Phil Chant only.

### C.   Drug Tests

On April 22, 2020, while Szabo worked for Muncy, he received a positive result on a drug test administered by Muncy.[42] Szabo now files a motion in limine seeking to prevent Muncy from introducing this drug test at trial.[43] At the surface level, this drug test is indisputably irrelevant. FLSA claims are a cut-and-dry

---

[41]   For example, if Szabo denies that Chant had any hand in the email, Chant's impeachment testimony may be admissible.
[42]   Doc. 75 at 1-2; Doc. 76 at 2.
[43]   Doc. 75.

enterprise: they deal with overtime pay. It does not matter how good an employee Szabo was, or whether he had disciplinary issues, or why.[44] So Muncy attempts to justify the admission of Szabo's drug test as a form of character evidence. But the introduction of character evidence is generally prohibited by the Federal Rules of Evidence.[45] And the exceptions highlighted by Muncy do not apply here.

Muncy attempts to introduce Szabo's drug test pursuant to Federal Rule of Evidence 608. Under Federal Rule of Evidence 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness." "The character of the previous conduct, the importance of the testimony, and the probable effect on the jury if the misconduct is divulged are all factors a judge must consider in deciding whether to allow inquiry about past conduct.[46] Still, Rule 608 does not permit the introduction of extrinsic evidence.[47] So the issue is not whether the drug test itself is admissible, but whether Szabo may be cross-examined about it.

---

[44] *Vasquez v. Spain Inn*, No. 19-452, 2019 U.S. Dist. LEXIS 179778, at *6 (D.N.J. Oct. 17, 2019) ("The employer's underlying reason for failing to comply with the FLSA is irrelevant.").
[45] Rule 404(a)(1).
[46] *United States v. Butch*, 48 F.Supp. 2d 453, 462 (D.N.J. 1999).
[47] Fed. R. Evid. 608(b) ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness"); *Becker v. ARCO Chemical Co.*, 207 F.3d 176, 204 (3d Cir. 2000).

12

Muncy first argues that "[o]nce Mr. Szabo introduces evidence of his character and reputation as a senior calibration technician under Pennsylvania Rule of Evidence 608, his character and reputation is now able to be impeached by the Defendant on cross-examination."[48] This argument is perplexing.[49] For one thing, it is difficult to see why testimony about Szabo's occupation would bear on his character or reputation for truthfulness under Rule 608. For another, Muncy's proposed use of the drug test inverts the Federal Rule. It is only when a witness's truthful character is *attacked* that he may offer testimony about his truthfulness to rehabilitate his credibility under Rule 608(a).[50]

And as the drug test has little to do with Szabo's character for truthfulness at all, Muncy cannot use it for this purpose. Szabo's positive drug test is not itself probative of his untruthfulness.[51] It may be probative if Szabo lied about it. So Muncy states in its briefings that "Mr. Szabo initially denied that he was doing drugs when he worked for Muncy Industries. Muncy Industries did not believe his

---

[48] Doc. 80 at 4.

[49] Muncy also refers to both Pennsylvania and Federal Rule of Evidence 608. *Id.* State rules of evidence obviously do not apply in Federal court, so I will ignore Muncy's references to the Pennsylvania Rule of Evidence 608 and assume that it intended to refer to the corresponding Federal Rule of Evidence 608.

[50] *See, e.g.*, *Coney v. NPR, Inc.*, 312 F.App'x 469, 474 (3d Cir. 2009).

[51] *United States v. Bertoli*, 854 F.Supp. 975, 1088 (D.N.J. 1994), *rev'd on other grounds*, 40 F.3d 1384 (3d Cir. 1994); *United States v. Weigand*, No. 5:17-cr-00556 (E.D. Pa. Apr. 14, 2021); *Dover-Hymon v. Southland Corp.*, No. 91-1246, 1993 U.S. Dist. LEXIS 13494, at *15 (E.D. Pa. Sept. 27, 1993) ("Because evidence relating to drug use is not probative of untruthfulness, the defendant is also precluded from inquiring into specific instances of drug use on cross-examination").

statement, so they tested him for cocaine use."[52] Muncy provides no support for this assertion, nor does it specify if Szabo was denying his drug use at the time of the test. "[T]he party seeking to introduce evidence has the burden of demonstrating that it is relevant so as to be admissible,"[53] and Muncy has not done so.

More importantly, Federal Rule of Evidence 403 would bar admission of the drug test in any event. In employment cases where drug test evidence was admissible, there has generally been at least some tie-in between the drug test and the employee's substantive claim.[54] Even if the drug test sheds a pinprick of light on Szabo's truthfulness, the obvious danger of unfair prejudice is that the jury may believe that a plaintiff who is using illicit drugs has not "earned" the payment of overtime wages to which he is legally entitled and deny his claims on that basis.[55] This danger is too high to compensate for the drug test's meager, and speculative, probative value. As Szabo's drug test relates to potential criminal conduct, the risk of prejudice is more severe than that same danger as it relates to the email sent to

---

[52] Doc. 80 at 4.

[53] *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 776 n.7 (3d Cir. 1989); *see also United States v. Vaughn*, No. 14-23 (JLL), 2016 U.S. Dist. LEXIS 13694, at *17-18, (D.N.J. Feb. 4, 2016) ("As with all evidence, the part seeking to admit it must establish a foundation for the admission, including establishing the relevance of the evidence and that its probative value outweighs any prejudice.").

[54] *See, e.g.*, *Palmer v. Evenheat Kiln, Inc.*, No. 10-1163, 2012 U.S. Dist. LEXIS 81742, at *3 (W.D. Pa. June 13, 2012) (employee's positive drug test undermined workers' compensation claim because it presented an alternative explanation for his symptoms).

[55] *Cf. Dowling v. United States*, 493 U.S. 342, 361-62 (1990) (Brennan, J., Dissenting) ("This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.").

Muncy's customers. Accordingly, Szabo's motion in limine to exclude any reference to his drug test results is granted.

### D.     Reimbursement

During Szabo's deposition, Muncy asked questions about a number of documents related to expense reimbursements and benefits Szabo received: the purchase of a company vehicle for plaintiff and payment of relocation expenses.[56] Szabo now files a motion in limine seeking to prevent Muncy from introducing this evidence at trial.[57]

Szabo asserts that, regardless of whether the reimbursements might be relevant to any offset or credit defense, Muncy has waived any such defenses, and so the reimbursements cannot be relevant on that basis.[58] While Muncy spends two pages of its brief distinguishing Szabo's cases on waiver,[59] it never raises any offset or credit defense at all, either in its pleadings or in its motion in limine. But "the party seeking to introduce evidence has the burden of demonstrating that it is relevant so as to be admissible."[60] Because Muncy does not argue for the reimbursements' relevance to any offset or credit defense, nor raise such defenses at

---

[56]   Doc. 74 at 2.
[57]   Doc. 71.
[58]   Doc. 74 at 4-6.
[59]   Doc. 82 at 16-17.
[60]   *Bruno*, 882 F.2d at 775 n.7.

all, I will not consider whether they are admissible on this basis. The waiver issue is then immaterial to this motion.

Muncy's main argument is that the reimbursements will be offered "as part of the consideration paid pursuant to the bona fide employment contract."[61] Muncy believes that these documents are relevant evidence in showing that Szabo falls under an exemption to the Fair Labor Standards Act. FLSA's overtime rules are set out in Title 29 U.S.C. § 207, which requires any employee who works more than forty hours in a week to be paid at an increased rate absent an applicable exemption. The *Belo* exemption, codified at 29 U.S.C. § 207(f) rests on four elements:

(1)   "[t]he employment must be pursuant to a *bona fide* contract or agreement";

(2)   "[t]he duties of the employees must necessitate workweeks which fluctuate both above and below forty hours per week";

(3)   "[t]he contract or agreement must specify the regular rate of pay, which is not less than the minimum wage, and compensation at not less than time and one-half that regular rate for all hours worked over the maximum workweek"; and

(4)   "[t]he contract or agreement must also provide a weekly guaranty of pay for not more than sixty hours per week."[62]

---

[61]   Doc. 82 at 2.

[62]   *Donovan v. Richland Shoe Co.*, 623 F.Supp. 667, 669 (E.D. Pa. 1985), *aff'd in part, vacated on other grounds sub nom. Brock v. Richland Shoe Co.*, 799 F.2d 80 (3d Cir. 1986), *aff'd sub nom. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); 29 C.F.R. §§ 778.400-778.414.

Muncy claims that it will introduce the reimbursements "as part of the consideration paid pursuant to the bona fide employment contract,"[63] but all this does is show the existence of a generic employment relationship, and that fact is undisputed. "The basic prerequisite for any FLSA lawsuit is an employment relationship between the plaintiffs and defendant."[64] A plaintiff's "FLSA claim must fail if they are unable to demonstrate employee status."[65] So just by pleading this cause of action, Szabo has placed the existence of an employment relationship beyond dispute. Muncy itself appears to recognize this fact, for it states elsewhere in its briefings that "[t]he parties agree that Muncy Industries, LLC, and Ric Szabo entered into a bona fide individual contract . . . to create the calibration program at Muncy Industries."[66] If Muncy wants to show that an employment relationship existed, it is in luck; Szabo's denial of this basic fact would sink his case. Muncy can then skip the step of proving this fact in such roundabout ways.

Therefore, these reimbursements are likely not even relevant for this purpose under the permissive requirements set by Federal Rule of Evidence 401. Their probative value towards the existence of an employment relationship is minimal at best because that issue is undisputed. It is true that evidence illustrating undisputed

---

[63]   Doc. 82 at 2.
[64]   *Davis v. Abington Memorial Hosp.*, 817 F.Supp. 2d 556 (E.D. Pa. 2011).
[65]   *Luxama v. Ironbound Express, Inc.*, No. 11-2224 (ES), 2013 U.S. Dist. LEXIS 90879, at *9 (D.N.J. Jun. 27, 2013).
[66]   Doc. 81 at 3. That being said, Muncy's "agreed facts" are completely unsupported with any record citations and seem to merely be formulaic recitations of the *Belo* exemption's elements.

facts can sometimes acquire relevance, if it provides useful background information or its exclusion would create a lack of context causing confusion for the jury.[67] But here, showing unrelated terms of Szabo and Muncy's employment relationship provides no helpful context to Szabo's FLSA claims, so even its relevance under Federal Rule of Evidence 401 is questionable.[68]

Nor do Muncy's vague gestures towards "consideration" bear upon whether a *Belo*-qualifying fluctuating workweek agreement was formed. Muncy appears to rip the words "bona fide contract or agreement" out of context to reason that anything bearing upon an employment agreement's formation must be relevant to the *Belo* exemption. But as I already explained, the existence of an employment relationship is a given here; the issue is the formation and content of a fluctuating workweek agreement specifically, not the existence of a "bona fide employment contract or agreement" of any kind. All the reimbursements show is that *some kind* of employment *relationship* existed; being reimbursed for work-related expenses has zero relevance towards showing that *this kind* of fluctuating workweek employment *agreement* existed.

---

[67] *Old Chief v. United States*, 519 U.S. 172, 178-79 (1997); Fed. R. Civ. P. advisory committee's note to 1972 amendment ("The fact to which the evidence is directed need not be in dispute."); McCormick on Evidence 315 (1954).

[68] *See, e.g.*, *McSparran v. Phila.*, 433 F.2d 976 (3d Cir. 1970) (in a wrongful death action, a deceased plaintiff's birth certificate was inadmissible because it only described already undisputed evidence about her cause of death and contributed no helpful background to the case).

Muncy states, without any citation, that "this Honorable Court issued a Memorandum Opinion . . . stating that the issues involved in determining whether the parties entered into a *bona fide* employment contract are issues of fact for the jury to decide, including things such as the purchase of a car and the use of a credit card for travel expenses in order to perform the work necessary as part of the contract."[69] In fact, this Court's Memorandum Opinion never stated any such thing. Instead, it analyzed evidence bearing upon whether Szabo or Muncy had control over Szabo's schedule. This analysis was in service of determining whether Szabo's duties were "such that neither he nor his employer could control or anticipate with any degree of certainty the number of hours he must work from week to week."[70] If Muncy's reimbursements somehow shed light on the irregularity of Szabo's duties, it has not explained how.

Even granting some minimal relevance, introducing the reimbursements would at best cause undue delay and waste time, which would significantly outweigh their probative value. As Szabo raises in his briefing, introducing this evidence may also cause unfair prejudice by enabling Muncy to appeal to being a "good employer who treats his employees well"[71] who should therefore not be responsible for unpaid overtime wages. In FLSA cases where employees owed debts to their employers, for

---

[69]   Doc. 82 at 2.
[70]   Doc. 47 at 12 (citing 29 C.F.R. § 778.405).
[71]   Doc. 74 at 7.

example, several courts have found that such evidence should be excluded for similar reasons.[72] If Muncy's real motive was to introduce this evidence through the back door to appeal to how good of an employer it is, then it is out of luck.

## IV.   CONCLUSION

Szabo's motion in limine seeking to preclude referencing Civil Action 2020-1914 is denied for the limited purpose of cross-examining Szabo on whether he wrote the email to Muncy's customers, to undermine Szabo's credibility. This motion in limine is otherwise granted. Szabo's motion in limine seeking to preclude introducing the testimony of undisclosed witnesses is denied as to any impeachment witnesses unknown to the Court, but it is granted as to witness Phil Chant. Szabo's motions in limine are granted in full with respect to Szabo's drug test resultsand Muncy's travel reimbursements.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[72] *Santiago v. Sanders*, No. 14-61505-CIV-MORE, 2015 U.S. Dist. LEXIS 188987, at *5-6 (S.D. Fla. Apr. 16, 2015) (O'Sullivan, M.J.).